[Cite as *State v. Swanson*, 2011-Ohio-6076.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 96358**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## WILLIAM SWANSON

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-543249

**BEFORE:** Blackmon, P.J., Cooney, J., and Keough, J.

**RELEASED AND JOURNALIZED:**     November 23, 2011

-i-

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square
Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Brian S. Deckert
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, P.J.:

{¶ 1} Appellant William Swanson appeals his conviction and assigns the following error for our review:

**"I. Appellant's conviction is against the manifest weight of the evidence."**

{¶ 2} Having reviewed the record and pertinent law, we affirm Swanson's conviction. The apposite facts follow.

{¶ 3} On October 27, 2010, a Cuyahoga County Grand Jury indicted Swanson on one count of felonious assault and two counts of kidnapping. All counts had notice of prior conviction and repeat violent offender specifications attached. On November 1, 2010, Swanson pleaded not guilty at his arraignment. After several pretrials, Swanson waived his right to a jury trial, and a bench trial commenced.

**Bench Trial**

{¶ 4} The state presented the testimony of the victim, Marlene Johnson; she testified that she had been friends with Swanson for many years and saw him almost daily; he bought her things and gave her money. She stated on the date of the alleged assault, she left her apartment building around 9 p.m. to visit a friend who lived in another apartment building four doors away, when Swanson appeared and followed her into the apartment building. As her friend was about to open the door, Swanson grabbed her arms and asked: "Where do you think you're going?" The two tussled; Swanson cut her on the neck with a knife and fled the building.

{¶ 5} After Swanson fled the building, Johnson went into her friend's apartment, examined her neck, went to her apartment building, and told her husband, Chris Smith, that Swanson had cut her. Johnson called the police emergency medical service. She acknowledged that she and her husband chased Swanson and that her husband had a knife. When the emergency medical assistance arrived, they examined Johnson's injury and determined that she did not need stitches.

{¶ 6} Johnson's husband testified he was cooking dinner when Johnson left the apartment to get beer. A short while later he saw Johnson running towards the apartment screaming that Swanson had cut her. He immediately grabbed a butcher knife and chased Swanson.

{¶ 7} Patrolman Byron Allen of the Cuyahoga Metropolitan Housing Authority Police Department testified that he responded to the area after receiving a report that a woman had been stabbed. Patrolman Allen stated that he found Johnson hysterical and with a wound on her neck that was not bleeding. Patrolman Allen testified that the Cleveland police did not recover any knife or keys on Swanson.

{¶ 8} Swanson has known Johnson for about 30 years and considers her his best friend. Swanson is 66 years old; he testified that their relationship has developed into one where he pays Johnson for sex. Swanson stated that Johnson would use the money to purchase crack cocaine.

{¶ 9} Swanson testified that Johnson called and asked him to take her to get beer. Swanson picked her up a short distance from her apartment. He drove to a nearby Shell gas station, where Johnson bought three bottles of beer that she drank while they sat in his car. She bought three more bottles of beer and drank them as well.

{¶ 10} Shortly after Johnson had finished drinking the beers, two individuals passed by the car and invited her to join them; Swanson recognized them as drug abusers.

Johnson followed the two individuals to a nearby apartment, and Swanson followed her. His intent was to discourage her from smoking any crack cocaine.

{¶ 11} As they arrived at the apartment and Johnson was about to enter, Swanson grabbed the sleeve of Johnson's coat and said: "You don't need to go in there, you high already, go home because you got to get up at 7:00 in the morning to make sure your daughter catches the bus at 7:30." Swanson testified that Johnson, while jerking away from him, knocked out his front tooth and yelled: "You ain't my man."

{¶ 12} Swanson stated that a tussle ensued; Johnson reached into her sweater, where he knew she kept a knife, and he grabbed the top of the sweater to prevent her from retrieving the knife, as they continued to struggle. Swanson testified that he gave up the struggle and decided to leave Johnson to her own devices. Swanson surmised that the car key he was holding might have cut Johnson when he grabbed the top of her sweater to prevent her from retrieving the knife.

{¶ 13} At the close of the evidence, the trial court found Swanson not guilty of felonious assault, but guilty of the lesser included offense of misdemeanor simple assault. The trial court also found Swanson not guilty of the remaining two charges along with the attached specifications. The trial court sentenced Swanson to 75 days in jail and gave him credit for 74 days.

## Manifest Weight of Evidence

{¶ 14} In his sole assigned error, Swanson argues his conviction was against the manifest weight of the evidence.   We disagree.

{¶ 15} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 16} In the instant case, Swanson argues he acted in self-defense and that the cut Johnson sustained was the result of an accident.   However, given that the trial court only found Swanson guilty of misdemeanor simple assault instead of felonious assault with a knife, and not guilty of the two counts of kidnapping, demonstrates that the trial court weighed the evidence and the credibility of the witnesses.   Clearly, the trial court found

Swanson more credible than Johnson and Smith, but still found that Swanson possessed a measure of culpability that constituted a simple assault.

{¶ 17} The determination of weight and credibility of the evidence is for the trier of fact. *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.   The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503.

{¶ 18} Accordingly, an appellate court may not substitute its view for that of the jury, but our role under *Wilson* is to sit as thirteenth juror and determine whether we disagree with the trial judge's resolution of the conflicting testimony.   Based on this record, we cannot disagree; the trial court concluded that an assault had occurred at the moment Swanson forcibly touched Johnson; thus, the trial court did not accept Swanson's justification for his actions.   We agree with the trial court's resolution of the conflicting testimony. Accordingly, we overrule Swanson's sole assigned error.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

COLLEEN CONWAY COONEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR