[Cite as *State v. Johnson*, 2021-Ohio-3220.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 20AP-469 |
| v. | : | (C.P.C. No. 18CR-5330) |
| James Johnson, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 16, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Sheryl L. Prichard*, for appellee. **Argued:** *Sheryl L. Prichard.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, James Johnson, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of aggravated burglary, a first-degree felony; felonious assault, a second-degree felony; and having a weapon under disability, a third-degree felony. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} On October 26, 2018, appellant was indicted on six counts: one count of aggravated burglary, in violation of R.C. 2911.11, a first-degree felony; one count of aggravated robbery, in violation of R.C 2911.01, a first-degree felony; one count of robbery, in violation of R.C. 2911.02, a second-degree felony; one count of felonious assault, in violation of R.C. 2903.11, a second-degree felony; one count of robbery, in violation of R.C.

20AP-469

2911.02, a third-degree felony; and one count of having a weapon under disability ("WUD"), in violation of R.C. 2923.13, a third-degree felony. Each count except the WUD included a three-year firearm specification pursuant to R.C. 2941.145(A). The indictment alleged the foregoing offenses occurred on or about September 19, 2018. (Oct. 26, 2018 Indictment.) Appellant entered a not guilty plea to the charges and requested a jury trial.

{¶ 3} On August 24, 2020, a jury trial commenced at which the following evidence was adduced. On September 19, 2018, at approximately 8:50 in the morning, Officers Don McCray and Stephen Conkel of the Columbus Police Department responded to a report of a shooting at 1210 East 21st Avenue, Columbus, Ohio. The dispatch arose from a 911 call by a female. Upon arrival, the officers found the victim, Mr. Hinson, on the couch of the living room of his apartment with a bullet wound injury to his lower right leg. A female was sitting next to him on the couch. Both Mr. Hinson and the female provided a description of the individual suspected in the incident. Based on what was reported by Mr. Hinson, the officers also called for a robbery detective.

{¶ 4} Mr. Hinson was transported to OSU main hospital. While at the hospital, Mr. Hinson was briefly interviewed by Detectives Jason Wood and Shawn Lent of the Columbus Police Department. Mr. Hinson told them that somebody came into his home, tried to sell him a camera, and then pulled out a gun and shot him. Detectives Wood and Lent then responded to the scene of the incident. A female by the name of Elianna Woods was present at the scene, and the detectives briefly interviewed her. Her remarks coincided generally with what Mr. Hinson reported as to what happened.

{¶ 5} Several weeks later, the detectives conducted a more at-length interview with Mr. Hinson. At that point in time, Mr. Hinson stated that the person who shot and robbed him was known to him from the neighborhood, but he did not know his name. Ultimately, Columbus Police received an anonymous tip that directed them to appellant as a possible suspect. Detectives created a photographic array which included a photograph of appellant. A blind administrator presented the array to Mr. Hinson, who selected appellant as the perpetrator.

{¶ 6} At trial, Mr. Hinson initially testified on direct examination that he knew appellant only as a panhandler from the neighborhood. On cross-examination by defense counsel, he admitted he knew appellant better than he initially stated, that appellant had

20AP-469

been to Mr. Hinson's apartment several times in the past, and that they "partied" together occasionally, including drinking and smoking weed together. (Tr. at 267-69.) Mr. Hinson later explained that he did not tell police about his partying with appellant because "[t]hat's a stupid thing to say to somebody, to a police officer, that you smoked weed or drank a beer with them." *Id.* at 303-04.

{¶ 7}   Mr. Hinson testified that several hours before the incident central to this case occurred, appellant came to Mr. Hinson's apartment with a camera which appellant wanted Mr. Hinson to buy so appellant would have cash to buy some drugs. Mr. Hinson declined to buy the camera. Mr. Hinson further testified that appellant returned very early in the morning on the day in question and knocked on his door. When the door was opened by Mr. Hinson, appellant brandished a pistol, pushed his way into the apartment and fired several times in the direction of Hinson's feet, with one of the bullets striking him in the foot. Appellant then took some of Mr. Hinson's property and fled.

{¶ 8}   Appellant testified at trial. He stated he had known Hinson for many years and that the two had "partied" together, using drugs, on numerous occasions. (Tr. at 389-92; 394.) Appellant testified that earlier in the morning on the day in question, he had been to Hinson's apartment several times, the first two times to use drugs together. Appellant stated that on the third visit that day, he sold a camera to Mr. Hinson. Appellant admitted that the camera was stolen and that the proceeds of the alleged sale were to be used to buy more narcotics.

{¶ 9}   Appellant further testified that he went back to Mr. Hinson's apartment a fourth time, and this time he brought a pistol which he wanted to try to sell to Mr. Hinson to get more money or trade for drugs and also because appellant was getting ready to start a rehabilitation program for substance abuse and he did not want to leave his gun at his house while he was absent because his small children lived there. Appellant testified he knew he was prohibited from possessing a firearm but that he needed it for protection. He testified that when he entered the apartment, Hinson began grabbing at the gun; that the two were wrestling around the apartment with both men trying to get the gun; and that the gun discharged. Appellant stated that he took the gun with him and fled the scene. Appellant denied taking anything else with him.

{¶ 10} At the conclusion of the trial, the jury returned a verdict finding appellant guilty of aggravated burglary with firearm specification, a first-degree felony; felonious assault with firearm specification, a second-degree felony; and having weapons while under disability, a third-degree felony.  (Sept. 10, 2020 Jgmt. Entry).  On September 10, 2020, the trial court issued a judgment entry which reflected the verdict of the jury and imposed a 15-year prison sentence.  *Id.*

{¶ 11}  This timely appeal followed.

## II.  Assignment of Error

{¶ 12}  Appellant asserts the following assignment of error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of aggravated burglary and felonious assault, as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III.  Discussion

### A.  Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶ 13}  Appellant asserts in his sole assignment of error that the verdicts of aggravated burglary and felonious assault were not supported by sufficient evidence and were against the manifest weight of the evidence.  We find no merit in either of appellant's contentions.

{¶ 14}  In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.  In conducting a review of the sufficiency of the evidence, " 'an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' "  *State v. Flood*, 10th Dist. No. 18AP-206, 2019-Ohio-2524, ¶ 16, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4, citing *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16.

20AP-469

{¶ 15} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881 ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 16} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 17} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-449, ¶ 38, *rev'd and remanded in part on other grounds*. Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th

20AP-469

Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 18} Appellant challenges his conviction on one count of felonious assault, in violation of R.C. 2903.11, and one count of aggravated burglary, in violation of R.C. 2911.11. R.C. 2903.11 defines felonious assault and provides, in relevant part:

> (A) No person shall knowingly do either of the following:
>
> (1) Cause serious physical harm to another or to another's unborn;
>
> (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.

In turn, "serious physical harm" is defined as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
>
> (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶ 19} Aggravated burglary is defined in R.C. 2911.11, which provides in relevant part:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured

> or separately occupied portion of the structure any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.
>
> (B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.

{¶ 20} In his challenge to the sufficiency of the evidence, appellant argues his testimony was more credible than that of Mr. Hinson's, and, therefore, the jury should have believed him instead of Mr. Hinson. More specifically, appellant asserts that initially, Mr. Hinson was not entirely forthcoming as to how well he knew appellant, and only upon cross-examination did he admit to the nature of his relationship with appellant. Appellant further asserts that Mr. Hinson's testimony of the events was inconsistent. Neither contention supports appellant's position regarding the sufficiency of the evidence.

{¶ 21} First, our review of the transcript of the testimony of Mr. Hinson and appellant readily reveals that neither witness provided crystal clear timelines and details of the events that unfolded on September 19, 2018, and the testimony elicited from both men was at times internally unclear and inconsistent.

{¶ 22} Moreover, although appellant challenges the sufficiency of the evidence in his sole assignment of error, his entire argument relates to the credibility of the victim witness. But "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *Bankston*, 2009-Ohio-754, at ¶ 4. Under this standard there is sufficient evidence in this case to support appellant's convictions for both aggravated burglary and felonious assault.

{¶ 23} The manifest weight of the evidence also supports appellant's convictions for aggravated burglary and felonious assault. Under this portion of appellant's argument, in essence he asserts that Mr. Hinson's testimony is not credible because he initially lied about how well he knew appellant. But the jury was free to believe the victim's testimony in spite

of this fact, and it is well-settled that " 'the testimony of one witness, if believed by the jury, is enough to support a conviction.' " *State v. Steward*, 10th Dist. No. 19AP-35, 2019-Ohio-5258, ¶ 17, quoting *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 33.

{¶ 24} As set forth above, under a manifest weight of the evidence analysis, although we are able to consider the credibility of the witnesses in conducting our review, "we are guided by the presumption that the jury * * * ' is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proferred testimony.' " *Cattledge*, 2010-Ohio-4953, at ¶ 6, quoting *Seasons Coal Co. Inc.* 10 Ohio St.3d 77 (1984). Appellant admitted he was high and confused at the time of the incident. (Tr. at 393, 404-05.) And, as argued by the state, the jury could reasonably infer that appellant brought the gun to Hinson's apartment to get drugs or money from Hinson "but, instead, ended up shooting him when Hinson was not cooperative." (Brief of Appellee at 6.) Further, the jury was entirely free to discount appellant's testimony that Mr. Hinson caused the gun to go off when Mr. Hinson was trying to grab the gun and instead believe Mr. Hinson's version of the events.

{¶ 25} In short, the jury was entirely free to believe Mr. Hinson, the victim, rather than appellant, and appellant's convictions are not against the manifest weight of the evidence merely because the jury found his  testimony credible. *See Gullick*, 2014-Ohio-1642, at ¶ 11. In engaging in the limited weighing of the evidence which we are permitted, we cannot say the jury clearly lost its way when it found appellant guilty of aggravated burglary and felonious assault beyond a reasonable doubt. Accordingly, we find that the manifest weight of the evidence supports appellant's convictions.

{¶ 26} In sum, appellant has failed to demonstrate that the evidence was insufficient or that the jury clearly lost its way and created such a manifest miscarriage of justice that his convictions on the counts of aggravated burglary, felonious assault, and having a weapon while under disability must be reversed and a new trial ordered. Because appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, his assignment of error is overruled.

20AP-469

## IV. Disposition

{¶ 27} Having overruled appellant's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.

———————————